**Herbert G. GIDEON, Judith Kelly Gideon, and Erebus, Inc., Plaintiffs,**

v.

**ADMINISTRATOR, UNITED STATES SMALL BUSINESS ADMINISTRATION, Defendant.**

Civ. No. 84–0167 P.

United States District Court, D. Maine.

March 6, 1986.

---

See also 102 F.R.D. 604.

Michael J. Pearce, Staurley, Hoglund & Pearce, Portland, Me., for plaintiffs.

Harlan J. Choate, Sp. Asst. U.S. Atty., Augusta, Me., Myrna B. Silin, Trial Atty., Small Business Admin., Washington, D.C., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Senior District Judge.

This case comes before the Court on cross motions for summary judgment. The parties have agreed that the merits of the action can be resolved on the cross motions. For the reasons set forth below,

plaintiffs' motion is denied, and defendant's motion is granted.

### I.

Plaintiff Erebus, Inc. ("Erebus") is a Maine corporation, of which plaintiffs Herbert G. Gideon and Judith Kelly Gideon are the sole stockholders, directors and officers. In February and March 1978, Erebus, Oxford Bank and Trust ("Oxford") and the Small Business Administration ("SBA") entered into a Loan Authorization Agreement for a $270,000 SBA guaranteed loan by Oxford to Erebus. On or about March 16, 1978, Herbert G. Gideon, on behalf of Erebus, executed and delivered to Oxford a collateral promissory note evidencing this debt. The note carried an initial interest rate of 9½% per annum, but provided that the interest rate was to be adjusted quarterly so as to remain at 2% above the prime rate charged by the First National Bank of Boston. Both the Loan Authorization Agreement and the promissory note contained the following provision regarding the interest rate in the event of default:

> If the undersigned shall be in default in payment due on the indebtedness [of this note] and the SBA shall purchase its guaranteed portion of the indebtedness [evidenced by this note], then the rate of interest on both the guaranteed and unguaranteed portion thereof shall become fixed at the rate in effect as of the date of default.

Erebus defaulted on its debt on October 16, 1981, when the rate of interest on its loan stood at 21½%. Pursuant to the terms of a Guaranteed Participation Agreement entered into between Oxford and the SBA in September 1978, in February 1982 Oxford requested the SBA to honor its guarantee of the Erebus loan. On or about March 8 and March 17, 1982, the SBA and Oxford executed a Servicing Agreement authorizing Oxford to continue to service and to liquidate the Erebus loan after its purchase by SBA. The SBA then, on April 12, 1982, assigned the promissory note and collateral documents to Oxford and pur-

chased its 82% guaranteed portion of the outstanding principal balance. On May 7, 1982, Oxford executed and delivered a Participation Certificate to SBA. In accordance with the Loan Authorization Agreement, the SBA continued to charge Erebus the 21½% interest rate that was being charged by Oxford at the time of default.

On May 11, 1984, plaintiffs filed in this Court a seven-count complaint seeking injunctive and declaratory relief, and damages, against Oxford, and injunctive and declaratory relief against the Administrator of the SBA. On August 15, 1984, the Court entered judgment dismissing plaintiffs' complaint as against Oxford. There remain only Counts II and VII of the complaint in which plaintiffs seek relief against the Administrator. In Count II, plaintiffs seek a determination that the SBA has charged excessive interest on the Erebus note since the date of default (plaintiffs also allege that Oxford was charging excessive interest prior to default). In Count VII, plaintiffs allege that the SBA's use of Oxford and its private attorney to collect the debt is improper (plaintiffs seek to avoid payment of attorney's fees recoverable against them under the promissory note).

The Court will separately discuss each of plaintiffs' contentions.

## II.

The regulation pursuant to which the SBA has been charging 21½% interest on the Erebus loan since default is Section 120.3(b)(2)(v) of the SBA regulations, 13 C.F.R. § 120.3(b)(2)(v) (1978). That regulation requires the interest rate of fluctuating interest loans to become fixed as of the date of default:

(v) When SBA purchases its share of a loan, the rate of interest to the borrower on SBA's share shall be the same as the rate of interest provided in the note. On those loans with a fluctuating interest rate, the interest charged by SBA shall be at that rate in effect at the time of default where a default has occurred, or at that rate in effect at the time of purchase where no default has occurred.

13 C.F.R. § 120.3(b)(2)(v) (1978). Regulation 120.3(b)(2)(v) was promulgated by the SBA Administrator pursuant to Section 5(b)(10) of the Small Business Act ("the Act"), 15 U.S.C. § 634(b)(10) (1978), which provides:

... [T]he Administrator [of the SBA] may ... (10) upon purchase by the Administration of any deferred participation entered into under Section 636 of this title, continue to charge a rate of interest not to exceed that initially charged by the participating institution on the amount so purchased for the remaining term of the indebtedness....

15 U.S.C. § 634(b)(10) (1978).

Plaintiffs contend that Regulation 120.-3(b)(2)(v) is invalid because it is in conflict with the interest rate limitation on certain SBA loans set out in Section 7(a)(4)(B) of the Act, 15 U.S.C. § 636(a)(4)(B) (1978). That section reads:

[T]he Administration's share of any such loan shall be the average annual interest rate on all interest-bearing obligations of the United States then forming a part of the public debt as computed at the end of the fiscal year next preceding the date of the loan and adjusted to the nearest one-eighth of 1 per centum plus one-quarter of 1 per centum per annum.

In light of the ambiguous and apparently conflicting language of Section 5(b)(10) and Section 7(a)(4)(B) of the Act, the Court looks to the legislative history of the two sections. *See Shapiro v. United States,* 335 U.S. 1, 8, 68 S.Ct. 1375, 1379, 92 L.Ed. 1787 (1948); Sutherland, *Statutory Construction* § 48.03 (4th ed. 1984). This history discloses that it was not the intent of Congress that the interest rate limitation in Section 7(a)(4)(B) of the Act apply to deferred participation loans such as the Erebus loan in this case. This construction also is in accord with the consistent interpretation given the statute by the SBA, the agency charged with its administration, to which "great deference" should be accorded. *Udall v. Tallman,* 380 U.S. 1, 16, 85

S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see* Sutherland, *Statutory Construction* § 65.-05.

The SBA is authorized to make small business loans by Section 7(a) of the Act, 15 U.S.C. § 636(a) (1978). That section empowers the SBA to make loans "either directly or in cooperation with banks or other lending institutions through agreements to participate on an immediate or deferred basis." SBA loans thus may be either (1) direct loans by the SBA to the borrower, (2) immediate participation loans in which a private lender makes the loan but the SBA immediately purchases the loan, or (3) deferred (guaranteed) participation loans in which the SBA purchases its guaranteed share of the loan from the original lender only when it is requested to honor its guarantee. It is this latter type of deferred participation loan which the SBA entered into with Oxford and Erebus.

From its inception, the Act has contained provisions regulating the rate of interest to be charged on SBA loans. In view of the differences in these loans, the Act has treated them separately with regard to interest rate restrictions.

Until 1974, the Act limited the interest rate the SBA could charge on a deferred participation loan to a fixed rate of between 3% and 6¾% at the time of purchase from the original lender. This artificially low interest rate created severe problems for the SBA and lending banks as the prime interest rate began to exceed greatly the statutory ceiling. Not only were borrowers going into default to obtain lower interest rates on their loans, but banks became less willing to make SBA loans because they could make a greater profit offering standard loans at the higher prime rate.

To correct this problem, the SBA in 1974 requested that Congress amend the Act to remove the fixed interest rate on guaranteed loans and to substitute a provision permitting the agency, upon purchase of the loan, to charge the same rate of interest as that charged by the original lender. Congress responded by enacting Public Law 93–386, 88 Stat. 742 (Aug. 23, 1974), Section 3 of which amended the Act by adding Section 5(b)(10). The Report of the House Banking and Currency Committee accompanying the 1974 amendment stated its purpose:

> Section 3: Section 3 provides that when a financial institution makes a legitimate demand upon SBA for the Agency to purchase its share of a guaranteed loan, that SBA may continue to charge the borrower the rate that the lending institution had charged for such a loan. Under existing legislation when SBA purchases the guaranteed portion from the participant and assumes servicing of the account, the rate of interest to the borrower is automatically reduced to the statutory rate applicable to the SBA share, which can go as low as 3%. This situation creates an inconsistency since it allows a borrower who may have gotten into trouble with his loan to receive an interest rate of 3% while the borrower who meets all payments of his guaranteed loan would be required to pay the financial institution rate, which in some cases is as high as 12%. Section 3 would allow SBA to charge the higher rate, but does not make such a position mandatory.

1974 U.S.Code Cong. & Ad.News 4500, 4502.

The SBA at the time also was having similar difficulties with its direct and immediate participation loans: the Act fixed the interest rate on such loans at 5½%, far below the cost of money to the Government because of the spread between the statutory rate and the prime rate. Congress again responded with the enactment of Public Law 93–386, Section 7 of which amended Section 7(a)(4)(B) of the Act, repealing the statutory fixed interest rate for direct and immediate participation loans and substituting a formula which set the rate at the cost of money to the Government plus one-quarter of 1%. The Report of the House Banking and Currency Committee accompanying this amendment stated its purpose:

Section 7: Section 7 removes the statutory interest rate of 5½% for SBA regular business loans made on a direct basis. And instead bases the rate at the cost of money to the government plus ¼% of 1%. At the present time the interest rate on these loans set by that formula would be 6⅛%. Since the statutory rate at the present time is below the cost of money, the Office of Management and Budget has greatly restricted SBA from making direct loans. The new language is designed to make the SBA profitmaking and, thus, remove the OMB objection. 1974 U.S.Code Cong. & Ad.News 4500, 4503.

The foregoing legislative history discloses that Congress saw a clear distinction between the SBA's guaranteed loan program and its direct loan program, and that it enacted separate amendments to the Act tailored to the unique problem facing each of these programs. It makes plain the intent of Congress that Section 7(a)(4)(B) of the Act, the section upon which plaintiffs rely, would be applicable only to direct and immediate participation loans, and that Section 5(b)(10) of the Act, the section upon which defendant relies, is the statutory provision applicable to deferred participation loans.

Given the legislative history of the 1974 amendments to the Act, as well as the consistent interpretation of the Act by the SBA, the Court holds that Section 120.-3(b)(2)(v) of the SBA Regulations, 13 C.F.R. § 120.3(b)(2)(v), has been validly promulgated by the Administrator consistently with Section 5(b)(10) of the Act, 15 U.S.C. § 634(b)(10), and that, as required by that Regulation, the SBA properly applied a 21½% interest rate to the defaulted Erebus loan.

### III.

■ Plaintiffs contend that the use of Oxford's counsel in the liquidation of the Erebus loan is barred by 28 U.S.C. § 516. That statute reads:

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 516.

There is no merit to plaintiffs' argument. Section 5(b)(7) of the Small Business Act, 15 U.S.C. § 634(b)(7) (1980), expressly authorizes the Administrator of the SBA to utilize a participating bank's services to liquidate deferred participation loans:

(7) [I]n addition to any powers, functions, privileges and immunities otherwise vested in him, take any and all actions (including the procurement of the services of attorneys by contract in any office where an attorney or attorneys are not or cannot be economically employed full time to render such services) when he determines such actions are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans made under the provisions of this chapter: PROVIDED, that nothing herein shall be construed as authorizing the Administrator to contract or otherwise delegate his responsibility for loan servicing to other than Administration personnel, *but with respect to deferred participation loans he may authorize participating lending institutions, in his discretion pursuant to regulations promulgated by him, to take such actions on his behalf, including, but not limited to the determination of eligibility and creditworthiness, and loan monitoring, collection and liquidation.* [Emphasis added]

15 U.S.C. § 634(b)(7) (1980).

The Court holds that SBA's use of the services of Oxford and its counsel in liquidating the Erebus loan is not barred by 28 U.S.C. § 516, and that the SBA properly may use such services in liquidating the loan.

### IV.

Plaintiffs' motion for summary judgment is DENIED; defendant's motion for sum-

mary judgment is GRANTED; and judgment will be entered DISMISSING plaintiffs' action against the defendant Administrator, with prejudice and with costs.

IT IS SO ORDERED.