The Honorable Bill Walters State Senator P.O. Box 280 Greenwood, AR 72936-0280
Dear Senator Walters:
I am writing in response to your request that I reconsider the conclusion offered in the attached Ark. Op. Att'y Gen. No. 92-329, in which my predecessor opined that 15 U.S.C. § 636(a)(4) preempts Arkansas state interest-rate limitations on loans made by Arkansas state banks with Small Business Administration ("SBA") guarantees.
RESPONSE
I agree in all respects with my predecessor's analysis in Ark. Op. Att'y Gen. No. 92-329.
The statute at issue, 15 U.S.C. § 636(a)(4), which is contained in the Small Business Act (the "Act"), 15 U.S.C. 631 et seq., provides in pertinent part:
(A) Interest rates and fees
 Notwithstanding the provisions of the constitution of any State or the laws of any State limiting the rate or amount of interest which may be charged, taken, received, or reserved, the maximum legal rate of interest on any financing made on a deferred basis[1] pursuant to this subsection shall not exceed a rate prescribed by the Administration. . . .
The correspondence attached to your request contains the following analysis of this statute:
 At first brush [sic], it appears that 15 U.S.C. § 636 does support Mr. Bryant's prior opinion. However, closer study supports the notion that 15 U.S.C. § 636 preempts State law only to the extent that State law provides for a higher maximum rate of interest than that prescribed by the SBA. The focus of U.S.C. § 636(a)(4) appears to relate to limiting
the rate of interest to small businesses; not on increasing the rate which may be charged to small businesses. In other words, if State law would allow for a higher rate of interest than that prescribed by the SBA (such as the law in the State of North Carolina), the maximum rate which could be charged on a loan guaranteed by the SBA must not exceed the rate prescribed by the SBA. This fairly meets the intent of Congress in permitting the SBA to limit the interest rate charged even if State law would allow for a higher rate.
 However, what prevents the interpretation that 15 U.S.C. § 636 does not displace State law to the extent that State law provides for a lower rate of interest than that prescribed by the SBA? If Congress truly desires to preempt State law providing for a lower maximum rate than that prescribed by the SBA, it could have used more definite language. For example, the underlined language could have been added, but was not:
 "Notwithstanding the provisions of the constitution of any State or the laws of any State limiting the rate or amount of interest which may be charged, taken, received, or reserved, the maximum legal rate of interest on any financing made on a deferred basis pursuant to this subsection may be a rate up to, but shall not exceed, a rate prescribed by the Administration."
Although I generally follow the reasoning in this passage,[2] I do not agree with the conclusion that Congress intended state usury limits to apply if set below the SBA cap. If, as you suggest, Congress intended the SBA cap on interest rates to apply only if no lower state cap exists, it need never have mentioned state law in the statute: it could and almost certainly would simply have declared that the SBA would not guarantee a loan on which the interest exceeded a specified rate. Any loan made at an interest rate between the SBA cap and the state law cap would be automatically barred as usurious under state law. Preemption would consequently not even be an issue. However, the statute does considerably more, initially declaring the inapplicability of state usury laws and then declaring that the SBA will set its own limit.
In light of the foregoing, I further see no significance in the fact that one or more jurisdictions may have enacted usury laws setting a permissible rate of interest higher than the SBA cap. SBA policy capping permissible interest rates at a certain level would not be affected in the least by a state law capping permissible rates at a higher level, since the SBA cap would fall within the range permitted under state law. There would consequently be no need for federal legislation addressing this disparity. The only circumstance that would give rise to a need for legislative clarification is a state's constitutional or legislative capping of interest rates at a lower level than the SBA cap, and this is precisely what 15 U.S.C. § 636(a)(4) preempts.
I appreciate that the purpose of the Act is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," 15 U.S.C. § 631(a) — a mission that might be interpreted as mandating that the SBA promote the lowest interest rates possible. However, experience reflects that inflexibly pegging the permissible interest rate at a particular level can work against the interests of small business owners. For instance, in Gideon, the court discussed at some length the Office of Management and Budget's restriction of SBA loans when the statutory cap on interest rates fell below the cost of money. 630 F. Supp. at 825-26. The SBA has further informed me that, historically, lenders have been far more inclined to issue long-term financing at higher interest rates, resulting in lower monthly loan payments to frequently cash-strapped small businesses. The SBA has provided me with a memorandum generated before the enactment of § 636(a)(4) expressing extreme dissatisfaction with Arkansas' usury law, in part because it "[h]ampers long term loans" and is "[v]ery restrictive and eliminates variable rate loans." I have further been provided an SBA legislative update written at the time § 636(a)(4) was under debate in Congress and an SBA newsletter announcing enactment of the statute. Both reflect that the SBA felt the proposed legislation "authorizes the Agency to establish national interest rates" and "negates the usury law in Arkansas." It is well established that an agency's interpretation of statutes pertinent to its mission will be upheld unless clearly wrong.See, e.g., ACW Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997).
In my opinion, then, 15 U.S.C. § 636(a)(4) reflects Congress' recognition that the SBA is uniquely qualified to determine what interest rate will best promote the interests of small business and that the SBA should be permitted to set that rate without the restriction of state usury laws. Although I recognize "the basic assumption that Congress did not intend to displace State law," Maryland v. Louisiana, 451 U.S. 725, 746 (1981), I am guided in my opinion by the principle that preemption can be inferred when "persuasive reasons" so dictate. Chicago N.W.Transportation Co. v. Kalo Brick Tile Co., 450 U.S. 311, 317 (1981). I believe such reasons exist in this case.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosure
[1] The nature of a deferred loan is described in Gideon v.Administrator, United States Small Business Administration,630 F. Supp. 822, 825 (D. Maine 1986):
 The SBA is authorized to make small business loans by Section 7(a) of the Act, 15 U.S.C. § 636(a) (1978). That section empowers the SBA to make loans "either directly or in cooperation with banks or other lending institutions through agreements to participate on an immediate or deferred basis." SBA loans thus may be either (1) direct loans by the SBA to the borrower, (2) immediate participation loans in which a private lender makes the loan but the SBA immediately purchases the loan, or (3) deferred (guaranteed) participation loans in which the SBA purchases its guaranteed share of the loan from the original lender only when it is requested to honor its guarantee.
[2] I fail to understand how including the phrase "may be a rate up to" would confirm a clear congressional intention to preempt state usury laws. In my opinion, this inclusion would do no more than rephrase the statutory language "shall not exceed."